UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| PIRATE P.S.C., | ) |
| | ) |
| Plaintiff, | )   Civil Action No. 3:22-CV-627-CHB |
| | ) |
| v. | ) |
| | )   **MEMORANDUM OPINION** |
| BANK OF AMERICA, N.A., | )   **AND ORDER** |
| | ) |
| Defendant. | ) |

*\*\*\*   \*\*\*   \*\*\*   \*\*\**

This matter is before the Court on Defendant Bank of America, N.A.'s Motion to Dismiss Plaintiff Pirata P.S.C's Second Amended Complaint. [R. 18 (Motion)]; *see also* [R. 15 (Second Amended Complaint)]. The Motion to Dismiss has been fully briefed. *See* [R. 24]; [R. 27]; [R. 30]. For the following reasons, the Motion will be granted in part and denied in part.

### I.     Background

Plaintiff brought this action in Jefferson Circuit Court on November 3, 2022. *See* [R. 1-2]. Shortly thereafter, on November 28, 2022, Bank of America removed the action to this Court.[1] *See* [R. 1]. Plaintiff has amended its complaint multiple times, and its Second Amended Complaint is now the operative pleading in this matter. *See* [R. 15]; *see also* Fed. R. Civ. P. 15(a).

According to the Second Amended Complaint, Plaintiff is a Kentucky Professional Services Corporation. *See* [R. 15, ¶ 1]. On April 20, 2021, "Plaintiff as attorney for a client and in support of that client's business transaction initiated an international wire transfer to the Commercial Bank of Dubai in the United Arab Emirates (UAE) in the amount of six hundred fifty thousand dollars ($650,000.00) using the Defendant's online banking internet website." *Id.* at ¶ 5.

---

[1] The original complaint named Bank of America Corporation as defendant, but Bank of America, N.A., is the appropriate party. *See* [R. 1, p. 1 n.1].

Plaintiff alleges that it relied upon the representations of Bank of America and the bank's reputation to properly execute the wire transfer instructions as given. *Id.* at ¶ 6. The intended recipient of the funds informed Plaintiff that the wire transfer was not received. *Id.* at ¶ 7.

Between April 20, 2021, and November 5, 2021, Plaintiff contacted and spoke by phone and in person with Bank of America representatives approximately twenty-five times, seeking information concerning the lost or missing funds. *Id.* at ¶ 8. Bank of America informed Plaintiff that it would attempt to recover the funds, but only if Plaintiff declared that the funds were missing due to a scam or fraud. *Id.* at ¶¶ 9-10. Despite the lack of proof of the whereabouts of the funds (because Bank of America refused to provide tracing information to Plaintiff), Plaintiff had no choice but to declare "scam or fraud" to gain Bank of America's assistance in recovering or locating the missing funds. *Id.* at ¶ 11; *see also* [R. 18-1] ("Scam Victim Acknowledgement") (SVA). On November 5, 2021, Bank of America informed Plaintiff by letter that its efforts to recover the funds were unsuccessful. [R. 15, ¶ 12].

Between April 20, 2021, and November 5, 2021, Plaintiff sought to recover the funds by independent means involving the Commercial Bank of Dubai, law enforcement, and legal counsel in the UAE. *Id.* at ¶ 13. According to the Second Amended Complaint, on multiple occasions during the twenty-five contacts Plaintiff had with Bank of America, the bank refused to provide Plaintiff with the information requested by the Commercial Bank of Dubai, law enforcement, and legal counsel so those entities might assist Plaintiff. *Id.* at ¶ 14. In particular, Plaintiff alleges that Bank of America refused to provide an MT-103, which is a standardized payment message through the Society for Worldwide Interbank Financial Telecommunication (SWIFT)[2] that is used

---

[2] According to the Complaint, SWIFT "is a Belgian cooperative society providing services related to the execution of financial transactions and payments between banks worldwide. Its principal function is to serve as the main messaging network through which international payments are initiated. The SWIFT

specifically for cross border/international wire transfers. *Id.* at ¶¶ 15-16, 19. Those entities had informed Plaintiff that, with timely receipt of the MT-103 and other SWIFT messages, the Commercial Bank of Dubai could "1) verify receipt (or not) of the funds, 2) verify whether funds were credited to a customer account at Commercial Bank of Dubai 3) verify for law enforcement the identity of the customer owning the account to which the funds may have been credited and 4) put a hold on or block transfer of any or all of the funds and/or freeze the account." *Id.* at ¶¶ 17-18; *see also* [R. 24, pp. 3-4].

However, because Bank of America refused to provide any SWIFT messages or an MT-103, none of these steps were taken by the Commercial Bank of Dubai. [R. 15, ¶ 19]. Instead, the Commercial Bank of Dubai, law enforcement, and legal counsel were unable and unwilling to assist Plaintiff "in the absence of basic SWIFT information proving at the very least that the Plaintiff did in fact wire $650,000.00 and was not fabricating the entire story." *Id.* at ¶ 20.

Plaintiff alleges that a Bank of America representative eventually informed Plaintiff during one of the twenty-five contacts that Plaintiff would have to file a lawsuit against Bank of America in order to obtain any SWIFT information related to Plaintiff's wire transfer. *Id.* at ¶ 21. To date, Plaintiff has no definitive proof of the whereabouts of the wired funds and has not received any refund or return of the funds. *Id.* at ¶ 23. At one point, Plaintiff was told by multiple parties, including a representative from the Commercial Bank of Dubai and the intended recipient that the funds might be in a blocked account at the bank under the control of the Central Bank of the UAE due to an error in the initial wire transfer; but without proof of the wire transfer in the form of the MT-103 or other customer records, Plaintiff was unable to take necessary steps to confirm this possibility or even verify Plaintiff had sent the funds at all. *Id.* at ¶ 24.

---

messaging network is a component of the global payments system. SWIFT acts as a carrier of the messages containing the payment instructions between financial institutions involved in a transaction." [R. 15, ¶ 15].

Based on these facts, Plaintiff alleges three causes of action against Bank of America: negligent execution of wire instructions (Count I); negligent recovery (Count II); and negligence (Count III). *See id.* at ¶¶ 26-58. These claims are pled in the alternative. *See id.*; *see also* [R. 24, pp. 9-10]. Plaintiff also alleges that it is entitled to punitive damages. *See* [R. 15, ¶¶ 59-61]. On March 2, 2023, Bank of America filed a Motion to Dismiss Plaintiff's Second Amended Complaint. *See* [R. 18]. That Motion has been fully briefed, *see* [R. 24]; [R. 27]; [R. 30], and stands submitted for review.

## II.     Legal Standard

Bank of America's Motion to Dismiss is based on Federal Rule of Civil Procedure 12(b)(6). *See* [R. 18]. To survive a motion to dismiss under that rule, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" if the factual content in the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Determining if a complaint sufficiently alleges a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common

sense." *Id.* at 679. Further, "[t]he complaint is viewed in the light most favorable to [Plaintiff], the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in [Plaintiff's] favor." *Gavitt v. Born*, 835 F.3d 623, 639-40 (6th Cir. 2016) (citing *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008)).

Additionally, although the parties in this case squabble over exhibits that appear in the record, *see* [R. 27 (Reply)]; [R. 30 (Sur-Reply)], the Court may consider certain matters outside of the pleadings without converting the Motion to Dismiss into one for summary judgment. For example, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Even so, in considering Bank of America's Motion to Dismiss, the Court has not relied on any of the exhibits disputed by the parties. *See* [R. 27 (Reply), pp. 2-3] (arguing exhibits [R. 24-1]; [R. 24-2] should not be considered).

**III.   Analysis**

As a preliminary matter, Plaintiff has pled its three claims in the alternative. Specifically, Plaintiff characterizes its Second Amended Complaint as pleading: "1) the negligent execution of its wire transfer instructions by the Defendant **OR** 2) the negligent recovery attempt voluntarily undertaken by Bank of America as contractually agreed in the SVA *after the completion of the process* **OR** 3) the negligent refusal to provide the Plaintiff with the necessary SWIFT information and other records per the implied duty of *Ousley* [], so that the Plaintiff could mitigate damages by enlisting the aid of law enforcement, legal counsel and [the Commercial Bank of Dubai]." [R. 24, pp. 9-10] (internal citations omitted) (emphasis in original).

Importantly, "litigants in federal court may pursue alternative theories of recovery, regardless of their consistency." *Cosmopolitan Title Agency, LLC v. JP Morgan Chase Bank, N.A.*, 649 F. Supp. 3d 459, 463 n.3 (E.D. Ky. 2023) (cleaned up). Indeed, the Federal Rules of Civil Procedure permit claims to be pled in the alternative and do not require claims to be consistent with one another. Instead, under the Rules, "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones," and, "[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). Further, "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). Thus, the Court must consider the sufficiency of each of Plaintiff's claims. *See Siriano v. Goodman Mfg. Co.*, No. 2:14-CV-1131, 2015 WL 12748033, at *21 (S.D. Ohio Aug. 18, 2015) ("[W]hile Rule 8(d) allows plaintiffs to plead inconsistent and alternative claims, each of those claims must still be sufficiently pled in accordance with Rule 8(a) to withstand dismissal.").

Through its Motion to Dismiss, Bank of America argues that all of Plaintiff's claims fail. First, the bank argues that the negligent execution of wire instructions claim is either implausible or preempted by the Kentucky Uniform Commercial Code. *See* [R. 18-2, p. 6]. Second, the bank argues that the negligent recovery claim is either insufficiently supported by facts or is duplicative of Plaintiff's claim for negligence. *See id.* at 9. And third, the bank argues that Plaintiff has failed to state a claim for negligence. *See id.* at 11. The Court will consider each of Plaintiff's claims (and Bank of America's arguments seeking dismissal of those claims) in turn.

### a. Negligent Execution of Wire Instructions

In Count I, Plaintiff alleges that Bank of America "breached [its] duty by failing to use ordinary care to faithfully and diligently execute the wire instructions provided by Plaintiff as

evidenced by the fact that the funds were never received by the recipient or" the Commercial Bank of Dubai.[3]  [R. 15, ¶¶ 27, 30].  As the parties recognize, Kentucky's Uniform Commercial Code governs this area of financial transactions.  *See, e.g.*, [R. 24, p. 10] (acknowledging that the Second Amended Complaint should have referenced KRS 355.4A-303, "which covers erroneous execution of payment orders (4A of the UCC)").

Relevant here, the wire transfer was a funds transfer under Kentucky statute.  *See* KRS 355.4A-104(1) ("'Funds transfer' means the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order.  The term includes any payment order issued by the originator's bank or an intermediary bank intended to carry out the originator's payment order.  A funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order.").  Therefore, the obligations of the parties to the transaction and the types of claims that may be brought concerning alleged errors in the transaction are controlled by statute.  *See, e.g.*, KRS 355.4A-302 ("Obligation of receiving bank in execution of payment order"); KRS 355.4A-303 ("Erroneous execution of payment order"); KRS 355.4A-305 ("Liability for late or improper execution or failure to execute payment order").

Importantly, as the Eastern District of Kentucky recently explained, common law causes of action relating to misconduct during the funds transfer process are preempted by the statutory scheme:

> "[R]esort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in [the] Article."  § 355.4A-102 cmt.; *see also Wright v. Citizen's Bank of East Tenn.*, 640 F. App'x 401, 406 (6th Cir. 2016) ("Article 4A displaces common-law claims relating to wire

---

[3] In this area of the law, many words have specific meanings.  For example, although Plaintiff uses the term "receiving bank" to describe the Commercial Bank of Dubai, Bank of America was actually the receiving bank in this transaction.  *See* [R. 18-2, p. 8 n.2] (citing KRS 355.4A-103(1)(d)).

> transfers if the claims arise out of a situation addressed by Article 4A or attempt to create rights, duties, or liabilities inconsistent with Article 4A."). "[T]he critical inquiry is whether [the Article's] provisions protect against the type of underlying injury or misconduct alleged in a claim." *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 89-90 (2d Cir. 2010). "Article 4A bars common law claims involving misconduct during the funds transfer process," but "the alleged misconduct must have occurred during the course of a funds transfer itself, and not outside or after completion of the process." *Baerg v. Ford*, No. 2014-CA-00762, 2016 WL 683118, at *3 (Ky. Ct. App. Feb. 19, 2016) [*not to be published, aff'd and remanded,* 532 S.W.3d 638 (Ky. 2017)].

*Cosmopolitan Title Agency*, 649 F. Supp. 3d at 463-64.

Interestingly, Plaintiff recognizes the preemption of common law claims based on misconduct during the funds transfer process, but simply asserts (without any support) that Count I, which alleges negligent execution of wire instructions, is not preempted. *Compare* [R. 24, p. 10] ("UCC 4A's bar of common law claims against banks for business conduct *during* the funds transfer process does *not* apply to the Plaintiff's allegations of negligent recovery and negligent failure to provide customer account records because those allegations concern conduct 'outside or after completion of the process.'") (emphasis in original), *with* [R. 24, p. 2] ("The Second Amended Complaint most assuredly pleads sufficient facts to support a viable legal theory on each Count."). However, contrary to Plaintiff's unsupported assertion, Count I is preempted because it is a common law claim "involving misconduct *during the funds transfer process*." *See Baerg*, 2016 WL 683118, at *3 (emphasis added); *Cosmopolitan Title Agency*, 649 F. Supp. 3d at 464 (finding plaintiff's "common-law claims [] based on the wire transfer itself" to be preempted); *see also* [R. 27, § II]. Because this claim is preempted by Kentucky's statutory scheme, Bank of America's Motion to Dismiss will be granted as to this claim.

    b. **Remaining Claims**

The remaining claims in the Second Amended Complaint (Counts II and III) are similar in what they allege: Count II alleges that Bank of America volunteered to assist Plaintiff in recovering the (mis)transferred funds, but that it was negligent in its recovery efforts, and Count III alleges that Bank of America breached its duty owed to Plaintiff by not providing Plaintiff with technical information so Plaintiff could seek to recover the lost funds on its own. *See* [R. 15, pp. 7-10]. Bank of America argues that these claims are duplicative, and it is true that there is some overlap between the two claims, as both reference Bank of America's refusal to provide Plaintiff with requested transaction information.

Still, the Court observes that Count II is based on the allegation that Bank of America voluntarily undertook to assist Plaintiff in recovering the funds and did not exercise reasonable care in that effort, while Count III only alleges that Bank of America refused to provide the requested information and is not based on any allegation concerning voluntary recovery efforts undertaken by the bank. At this point in the litigation, the Court considers these claims sufficiently distinct. *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

Further, both of these claims allege misconduct *outside* of the funds transfer process, meaning they are not preempted by the Kentucky Uniform Commercial Code. *See Baerg*, 2016 WL 683118, at *3 ("Notably, a funds transfer is complete when the beneficiary's bank accepts a payment order 'for the benefit of the beneficiary of the originator's payment order.'") (quoting KRS 355.4A-104(1)); *cf. Wright*, 640 F. App'x at 410 ("Because Article 4A does not address representations made by a bank representative about the bank personnel's training, experience, or ability to perform wire transfers, Count II is not displaced by Article 4A."). In other words, because the claims relate to misconduct that allegedly occurred after the wire transfer (*i.e.*, in recovery efforts), preemption poses no bar to them moving forward. Indeed, Bank of America

raises no preemption argument as to these claims. *See* [R. 18-2, §§ II, III]. The Court therefore will proceed to consider whether each claim has been adequately pled.

### 1. Negligent Recovery

Count II alleges that Bank of America volunteered to recover Plaintiff's missing funds but was negligent in its recovery effort. *See* [R. 15, pp. 7-8]. Under Kentucky law, "[i]t is well established that a breach of a voluntarily assumed duty can give rise to tort liability." *Grand Aerie Fraternal Ord. of Eagles v. Carneyhan*, 169 S.W.3d 840, 847 (Ky. 2005). "A threshold inquiry under this doctrine is whether the putative tortfeasor has actually and specifically undertaken to render the services allegedly performed without reasonable care." *Id.*

In this case, Plaintiff alleges: that Bank of America "volunteered to recover the missing funds," but only if Plaintiff would declare "scam or fraud" through the SVA; that Bank of America informed Plaintiff that its efforts were unsuccessful, but Plaintiff does not know whether Bank of America "in fact undertook any efforts to recover the funds" because Bank of America has refused to provide Plaintiff with any information whatsoever about its efforts to recover the funds; and that Bank of America has refused to provide any SWIFT messages and an MT-103, thereby preventing Plaintiff from being able to recover the funds on its own (to be discussed in more detail below in regard to Count III). *See* [R. 15, pp. 7-8]; *see also* [R. 15-1, p. 1 (Correspondence from Bank of America to Plaintiff)] ("[W]e previously notified you, that as a courtesy, we would attempt to recover funds on your behalf."); [R. 18-1, p. 1 (SVA)] ("We would like to help you in your effort to recover the funds you transferred."). At this stage of the litigation, such allegations are sufficient to state a claim.

Indeed, these facts sufficiently allege that Bank of America voluntarily assumed a responsibility to assist Plaintiff in its efforts to recover the funds, but after that assumption, refused

to exercise an appropriate level of care in those efforts, and that Plaintiff was harmed as a result. *See Patton v. Bickford*, 529 S.W.3d 717, 729 (Ky. 2016) ("The elements of a negligence claim are (1) a legally-cognizable duty, (2) a breach of that duty, (3) causation linking the breach to an injury, and (4) damages."); *see also Johnson v. Brey*, 438 S.W.2d 535, 537 (Ky. 1969) (finding negligence instruction appropriate under theory of assumed duty).

Notably, Bank of America does not deny that it voluntarily offered to assist in the recovery of the funds. Instead, it attempts to narrow the duty it had expressly undertaken to "attempt to recover funds on [Plaintiff's] behalf," *see* [R. 15-1, p. 1], to a more constrained reading: "Here, it is clear from the [Second Amended Complaint] that BANA did not voluntarily undertake a duty to provide Plaintiff with technical information as part of its recovery effort because, as Plaintiff alleges, BANA repeatedly refused to comply with Plaintiff's requests for that information."[4] *See* [R. 18-2, p. 10]. But to reiterate, this case is only at the pleadings stage, and on this record, Plaintiff has plausibly alleged: that Bank of America voluntarily assumed a duty to assist in recovering the funds; that Bank of America breached that duty through the bank's actions (or inactions) in attempting to recover the funds, including by failing to provide both adequate assistance and requested transaction information to Plaintiff; and that Plaintiff was injured by, and has damages from, that breach. *See* [R. 15, ¶¶ 35-50]. Whether Plaintiff will be able to prove these allegations is a matter the parties can explore in discovery and later motions practice.

Additionally concerning this claim, Bank of America quotes from caselaw regarding certain "preconditions" for a claim based on the assumed duty to protect a *third party* and argues that Plaintiff has not sufficiently pled such a precondition here. *See* [R. 18-2, p. 9] (quoting *Carneyhan*, 169 S.W.3d at 848 n.2) (citing, in part, the Restatement (Second) of Torts). However,

---

[4] Bank of America refers to itself as "BANA."

it is not clear that Plaintiff would be *a third party vis-a-vis* the Bank in this instance. *Cf.* Restatement (Second) of Torts § 324A (1965) ("A operates a grocery store. An electric light hanging over one of the aisles of the store becomes defective, and A calls B Electric Company to repair it. B Company sends a workman, who repairs the light, but leaves the fixture so insecurely attached that it falls upon and injures C, a customer in the store who is walking down the aisle. B Company is subject to liability to C."). Rather, Plaintiff alleges that the bank voluntarily undertook a duty to directly assist it (as one of the bank's customers), which would not make Plaintiff a third-party relative to the bank in this instance. The circumstances discussed by *Carneyhan* are therefore factually inapposite to the current record, and the preconditions discussed therein are not a barrier to this claim going forward.

For now, and for the reasons explained, Plaintiff's claim predicated on Bank of America's voluntary assumption of a duty survives the bank's Motion to Dismiss, and the Motion will be denied as to this claim.

### 2. Negligence

In Count III, Plaintiff alleges that Bank of America breached a duty owed to Plaintiff when the bank refused to provide technical information, specifically an MT-103 and other SWIFT messages, so that Plaintiff could attempt to recover the funds on its own. *See* [R. 15, pp. 8-10]. Plaintiff relies on *Ousley v. First Commonwealth Bank of Prestonsburg*, 8 S.W.3d 45 (Ky. Ct. App. 1999), in support of this claim.

In *Ousley*, the plaintiffs had brought a declaratory judgment action "seeking reasonable access to the information related to their past accounts, loans, and agreements with" the defendant bank, which the bank had refused to provide. *See id.* at 46. Upon review, the Kentucky Court of Appeals found that the plaintiffs had "a fundamental right to records of their accounts and loans

with the bank," which was separate from any subsequent action based on what was found in those records. *Id.* at 46-47. Through its discussion, the court noted that "whether a former customer of a bank has a right to records regarding his accounts and loans at a bank appear[ed] to be a question of first impression in Kentucky," *id.* at 47, and in answering that question in the affirmative, the court explained:

> As to the bank's relationship to its depositor, it has been held that a deposit of money in a bank passes title and becomes part of the assets of the bank under an implied contract that the sum will be repaid upon demand. *Scoggan v. Dillon, Ky.*, 252 S.W.2d 35 (1952). This creates a relationship wherein the depositor is considered a creditor and the bank a debtor. *Id.*; *Ferguson Enterprises, Inc. v. Main Supply, Inc.*, Ky. App., 868 S.W.2d 98 (1993); *Steelvest v. Scansteel Service Center, Inc.,* Ky., 807 S.W.2d 476 (1991). In regard to this inherently contractual relationship, it has been held that banks have a duty to act in good faith and to exercise ordinary care in dealing with their customers and their accounts. *Christie v. First American Bank*, Ky. App., 908 S.W.2d 679 (1995); *Bullitt County Bank v. Publishers Printing Co.*, Ky. App., 684 S.W.2d 289 (1984). KRS 355.1–203 and KRS 355.4–103 of the Uniform Commercial Code (UCC) also impose a duty of good faith and fair dealing on banks. The question that necessarily follows is, is there implied in this duty of good faith and fair dealing a duty on the part of a bank to provide its former customer with records of their accounts? We believe there is.

*Id.* (citations as in original).

Through its briefing, Bank of America argues that Plaintiff's claim based on the bank's refusal to provide transaction information fails for several reasons. First, the bank slices its arguments addressing the duty underlying Plaintiff's claim into two theories, one based on the duty of good faith and fair dealing between a bank and its customers and one based on a general negligence theory. *See* [R. 18-2, p. 11] ("Although difficult to follow, Count III appears to combine the concepts of a duty of care and the implied duty of good faith.").

Under the first theory, Bank of America argues that Plaintiff has failed to show a "special relationship" existed for the duty of good faith and fair dealing to apply, *see id.* (citing *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt.,* LLC, 941 F. Supp. 2d 807, 816 (E.D. Ky.

2013)), and that banks generally do not owe a fiduciary duty to their customers, *see id.* (citing *Scott v. Forcht Bank*, 521 S.W.3d 591, 597 (Ky. Ct. App. 2017)). However, the cases cited by Bank of America either do not involve a bank and its customers (*James T. Scatuorchio Racing Stable*) or do not address the duties discussed by the Court in *Ousley* (*Scott*). Thus, Bank of America's arguments in this regard fail to account for the duties Kentucky law views banks as owing to their customers as outlined in *Ousley*. *See Ousley*, 8 S.W.3d at 47 ("In regard to this inherently contractual relationship, it has been held that banks have a duty to act in good faith and to exercise ordinary care in dealing with their customers and their accounts. KRS 355.1–203 and KRS 355.4–103 of the Uniform Commercial Code (UCC) also impose a duty of good faith and fair dealing on banks.") (internal citations omitted); *see also Forcht Bank, NA v. Gribbins*, No. 2014-CA-000592-MR, 2015 WL 4039612, at *3 (Ky. Ct. App. July 2, 2015) (citing *Ousley*, 8 S.W.3d at 47).

As to the second theory, Bank of America argues that there is no duty under a negligence theory for a bank to be required to provide a customer with "technical information." *See* [R. 18-2, p. 12]. But this argument, again, fails to account for the language in *Ousley* regarding the duty of banks (based on a contractual relationship) "to act in good faith and to exercise ordinary care in dealing with their customers and their accounts." *See Ousley*, 8 S.W.3d at 47.

Next, speaking of *Ousley*, Bank of America argues that Plaintiff should have filed a declaratory judgment action like in that case and attempts to distance the "account" information that the court ordered was required to be provided to the bank customers there from the "technical information" Plaintiff seeks here. *See* [R. 18-2, p. 12] ("As a matter of public policy, a customer's demands for production of technical information, as opposed to the account information at issue in *Ousley*, are not entitled to 'legal protection.'"). However, Bank of America has provided no authority to demonstrate that, *at the pleadings stage*, Plaintiff's claim falls outside of the Kentucky

Court of Appeal's decision in *Ousley* regarding the duties owed by a bank to its own customers to provide them with account information. *See Ousley*, 8 S.W.3d at 47. And the bank's arguments that certain of Plaintiff's allegations are speculative and that Plaintiff is improperly using a defense (mitigation of damages) to support its cause of action are likewise unpersuasive. *See* [R. 18-2, § III]; *see also* [R. 27, §§ I, III].

Simply stated, at this stage of the litigation, the Court is unpersuaded by Bank of America's arguments that Plaintiff has insufficiently plead a claim that the bank breached a duty owed to it by refusing to provide technical information relating to the wire transfer. This is particularly true given the court's recognition in *Ousley* that banks are often the only means by which a party can obtain certain financial information:

> There are many legitimate reasons a former customer would need his former bank records—audits, personal accounting, divorce, etc. As the bank is custodian of these records, it is the only source from which a former customer can obtain them. Apparently, the only reason appellee refuses to give appellants copies of their records is because it is afraid of potential litigation based on what is in said records. This is simply not a good reason.

*Ousley*, 8 S.W.3d at 47. The Court thus finds that Plaintiff's claim in Count III of the Second Amended Complaint is sufficient to survive Bank of America's Motion to Dismiss, and the Court will deny the Motion as to this claim.

As a concluding matter, the Court observes that Counts II and III both involve claims that could be considered contractual in nature. For example, Count II references the parties' obligations under the Scam Victim Acknowledgement, and, for Count III, the obligations discussed by the court in *Ousley* were based on the contractual relationship between a bank and its customers. Still, at this stage of the litigation, the Court finds that Counts II and III should be permitted to proceed as pled. *See generally Katz v. Belveron Real Est. Partners, LLC*, 28 F.4th 300, 308 (1st Cir. 2022) ("Case law interpreting the federal rules of civil procedure demonstrates a 'belief that when a party

has a valid claim, they should recover on it regardless of their counsel's failure to perceive the true basis of the claim at the pleading stage, provided always that a late shift in the thrust of the case will not prejudice the other party.") (cleaned up) (quoting 5 Wright and Miller, Fed. Prac. & Proc. Civ., § 1219 (4th ed. 2021)).

## IV. Conclusion

For the foregoing reasons, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. Bank of America's Motion to Dismiss Plaintiff's Second Amended Complaint **[R. 18]** is granted in part and denied in part. Specifically, the Motion is **GRANTED** as to Count I, and that claim is dismissed with prejudice; the Motion is **DENIED** as to Counts II and III.

This the 2nd day of January, 2024.

*[signature]*

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY